UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---------------------------------------------------------
                              )  CRIMINAL ACTION
UNITED STATES OF AMERICA      )  NO. 07-259 (ADM/RLE)
                              )
         vs.                  )
                              )  Courtroom 13 West
(01) LARRY CURTIS TATE        )  Friday, April 25, 2008
                              )  Minneapolis, Minnesota
---------------------------------------------------------


**S E N T E N C I N G**
**D A Y   2**


BEFORE THE HONORABLE ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE



**A P P E A R A N C E S:**


For the Government:     **OFFICE OF THE U.S. ATTORNEY**
                        By:  TRACY L. PERZEL
                             Assistant U.S. Attorney
                        600 United States Courthouse
                        300 South Fourth Street
                        Minneapolis, Minnesota  55415



For the Defendant:      **LAW OFFICES OF TIMOTHY R. ANDERSON**
                        By:  TIMOTHY R. ANDERSON, ESQUIRE
                        310 Fourth Avenue South - Suite 1050
                        Minneapolis, Minnesota  55415



Court Reporter:         **TIMOTHY J. WILLETTE, RDR, CRR, CBC, CCP**
                        Official Court Reporter - U.S.D.C.
                        1005 United States Courthouse
                        300 South Fourth Street
                        Minneapolis, Minnesota  55415
                        612.664.5108

1    (4:15 p.m.)

2                      **P R O C E E D I N G S**

3                         **IN OPEN COURT**

4    (Defendant present)

5            THE COURT:   Good afternoon.  Please be seated.

6            THE CLERK:   The Court calls the case of United

7    States of America vs. Larry Curtis Tate, Criminal Case No.

8    07-259.

9            Would counsel note their appearances, please.

10           MS. PERZEL:   Good afternoon, your Honor.   Tracy

11   Perzel on behalf of the United States.

12           THE COURT:   Good afternoon, Ms. Perzel.

13           Mr. Anderson?

14           MR. ANDERSON:   Good afternoon, your Honor.

15   Tim Anderson here on behalf of Mr. Larry Tate, also present

16   before the Court.

17           THE COURT:   And good afternoon, Mr. Tate.

18           I apologize that we're running a little behind the

19   announced schedule.  I've been in trial and needed a few

20   minutes to talk to Ms. Chaiken.

21           I have read the position papers that you have filed

22   on Mr. Tate's behalf, Mr. Anderson --

23           MR. ANDERSON:  Thank you.

24           THE COURT:   -- as well as Ms. Perzel's response,

25   and let me tell you about a couple changes that are going to

1    be made in the presentence investigation to conform with some

2    of the points raised and some other -- at least in my

3    opinion -- relatively minor issues.

4            First of all, the cover sheet of the presentence

5    investigation will obviously be changed to reflect

6    Mr. Anderson as your new attorney, Mr. Tate.

7            Paragraph 52, which relates to the calculation of

8    the base level offense, will be changed from 32 to 30 because

9    of the new guidelines and the new configuration, and

10   therefore that level will be put at 30 rather than 32, but it

11   really is not going to affect the ultimate sentence here

12   because the career offender status applies.  I'll hear your

13   argument on that, but at least in terms of my preliminary

14   adjustments, that one will stay as is.

15           Also, on page 14 or paragraph 65 of the presentence

16   investigation, after some further checking about the sentence

17   actually served for the fourth degree assault, it's more

18   appropriately assessed as a two-point rather than a

19   three-point offense, which will bring the criminal history

20   points down slightly to 26 total points, still a very high

21   number and still falling within the category VI, which

22   doesn't change the guideline numbers but does make some

23   changes in the presentence investigation.  So those are

24   changes that will be made for sure.

25           Based upon the probation officer Ms. Alston's

application of the guidelines to the facts in this case, it's my intent to adopt a guideline determination of this being a base level offense of 32.  It's a total offense level of 34 and three points deducted for acceptance of responsibility, but the career offender applies, leaving it at 34.

This is a criminal history now with 26 points, still a Category VI, career offender, which would make the guidelines sentence 262 to 327 months, the supervised release period five years, the fine range $17,500 to $4 million, plus costs of imprisonment or supervised release, and the applicability of a $100 special assessment.

Does the Government take issue with the Court's factual statements in the presentence investigation as my findings of fact or the guideline analysis?

MS. PERZEL:  No, your Honor.

THE COURT:  Mr. Anderson, I know you do based on some of your pleadings or position papers and I'll hear you from the lectern.

First of all, I don't know that at this point you dispute the factual statements.  Do you?

MR. ANDERSON:  No, your Honor.

THE COURT:  I will adopt those as my findings of fact and hear you with regard to your guideline analysis.

MR. ANDERSON:  Just briefly.  I think I -- I hope I laid it out clearly, the argument, in the sentencing

1    pleading regarding whether or not Mr. Tate should be treated

2    as a career offender.  The argument is essentially this:

3          That he did plead to a charge.  The fourth degree

4    assault was a felony as written in the statute.  The argument

5    is that it was not clear that he was actually sentenced as a

6    felony under Minnesota law and the argument is that by

7    operation of the law, that my argument is that he was

8    actually sentenced as a gross misdemeanor.  Therefore, under

9    the stay of imposition of sentence under Minnesota Statute

10   609.135 it was actually started as a gross and it ended as a

11   misdemeanor ultimately and therefore it shouldn't count as a

12   prior crime of violence under the career offender guidelines.

13         Other than that, I would leave it submitted on the

14   briefs regarding that issue.

15         THE COURT:  All right.  Ms. Perzel, did you want

16   to be heard briefly on that issue?

17         MS. PERZEL:   Your Honor, I have nothing beyond

18   what's stated in my position pleading.

19         THE COURT:  All right.  Well, after examination of

20   those pleadings and those arguments, I am convinced that the

21   career offender appropriately applies.  The issue is the way

22   the sentence was imposed originally and I didn't find --

23   although I respect your argument, I didn't find any authority

24   for changing the career offender level, so the guideline

25   parameters as I've announced them will apply to this case.

1    But of course, that does not end the sentencing analysis

2    because of the 3553 factors and case law allowing the Court

3    to consider other factors with regard to the guideline

4    analysis.

5              So, at this point, if you and Mr. Tate will come

6    forward to the lectern.

7         (Mr. Anderson and the defendant approach the lectern)

8              THE COURT:  Ms. Perzel, did the Government wish to

9    use its right to allocute regarding Mr. Tate's sentence?

10             MS. PERZEL:   Your Honor, I may just briefly

11   perhaps following whatever Mr. Anderson --

12             THE COURT:   Okay.  Mr. Anderson, then, we'll hear

13   from you and your client in whatever order you might prefer.

14             MR. ANDERSON:   Thank you, your Honor.  I think I

15   will start, give an argument, and then I think Mr. Tate does

16   wish to be heard.

17             First of all, based on the fact that you have found

18   that he does qualify as a career offender, as you stated,

19   there still is an analysis left to be made under the 3553(a)

20   factors.  And as submitted at length in the sentencing

21   pleading, under those factors, there is sufficient and

22   substantial -- there are substantial reasons for this Court

23   to depart substantially downward in that very significant and

24   high guideline range of 262 to 327 months under the career

25   offender guideline.

1          Number one, under the nature and circumstances of

2     the offense, this was a relatively typical low-level drug

3     dealing offense.  There was a total of a little over four

4     ounces of crack cocaine.  I'm not downplaying the seriousness

5     of the offense and neither is Mr. Tate, but I would at least

6     submit that it's no more serious than the typical such

7     conspiracy case.

8          And I think especially focusing on the **Kimbrough**

9     case and the huge disparity in the career offender guidelines

10    range between crack and powder cocaine, I think that that

11    alone, but supplemented by all sorts of other reasons, that

12    alone is sufficient reason for this Court to depart

13    substantially downward.  And as noted in my brief, the career

14    offender guideline range for crack cocaine under these

15    circumstances is 262 to 327 months, but for the same amount

16    of roughly four ounces, a little over four ounces of powder

17    cocaine would be 151 to 188 months, well over --

18    approximately ten years lower.

19          Under **Kimbrough**, of course, this Court is well

20    aware that this Court has the discretion to base a downward

21    departure on the issue of the disparity between the crack and

22    powder cocaine sentencing guidelines.

23          THE COURT:  But they've been pretty clear about

24    how much I should change that sentence with regard to the

25    two-level difference, correct?

1          MR. ANDERSON:   Well, the Sentencing Commission has

2     said that they have started the process of fixing that

3     anomaly within the guidelines and they frankly haven't yet

4     addressed the issue of the career offender guideline range.

5     So they started with that two-level, but they have made clear

6     that that's the beginning of the process, not the end of the

7     process, so I think that's important to consider.  And I

8     think it's also important to consider cases like **Kimbrough**

9     and the other cases that I cited in my brief, that there are

10    sentencing courts who are departing substantially downward

11    based on that disparity and other issues within their case.

12          And in **Kimbrough**, Ms. Perzel correctly states that

13    the court went down from 220-something to 15 years, but in

14    that case that was the mandatory minimum.  That was as low as

15    the court could go because there was a ten-year mandatory

16    minimum for the drugs and another five years for use of a

17    firearm.  In this case we don't have use of a firearm, so you

18    are theoretically able to go down as far as to ten years, and

19    we believe that that would be more than sufficiently -- more

20    than a sufficient sentence under the facts of this case and

21    certainly a sentence in the range of 262 and up would be

22    greater than necessary under these facts.

23          The history and characteristics under 3553(a) of

24    Mr. Tate, I would submit he was -- he was a long-term drug

25    dealer, but I think a relatively low-level drug dealer.  He

1   wasn't somebody who could be characterized as a kingpin.  He

2   was characterized as an average participant in this offense.

3          And in addition, his prior convictions for those

4   two crimes of violence, the third degree assault and fourth

5   degree assault, I would submit that those are at least on the

6   lower range of the spectrum of the types of prior crimes of

7   violence that would get somebody in the situation where they

8   would be looking at a double departure, upward departure

9   based on the guidelines.  So if you're using a base level 30,

10  if he didn't have the crime of violence, minus three points

11  for acceptance, it would have been 130 to 162 months.

12  Instead, the guidelines dictate 262 up to 327.

13         Although he has, you know, clearly an extensive

14  criminal record as revealed and shown clearly in the PSR, I

15  think it's significant he's never served any time in prison.

16  At most he's served eight months at a stretch for any

17  specific offense.

18         THE COURT:  I have 18 months at one point.

19         MR. ANDERSON:  He was sentenced to 18 months, but

20  he served initially one year, so serving eight months of that

21  one year.

22         THE COURT:  All right.

23         MR. ANDERSON:  I mean, just literally, he hasn't

24  sat in prison anywhere for 18 months or anything like that.

25  So a ten-year, 15-year sentence would be absolutely

significant and substantial for this person standing before
you today, and meaningful, a meaningful sentence.

As you'll hear from him and as he has indicated to
the probation officer, he takes responsibility for his
action.  He pleaded guilty.  He's shown a desire to turn his
life around.  He recognizes he needs help.  He needs
treatment, counseling.  He's looking forward to the
educational opportunities he'll have.  He's also I think
significantly tried to assist in ways that have been related
to the Court *in camera*, and he has continued to do that even
to this week.  It hasn't ultimately worked out in the fashion
he had hoped, but it was -- he has made -- he has made his
efforts and it's difficult from where he is.

As far as looking at what sentence would provide
proper deterrence and protection of the public, again, ten
years, 15 years would still be an incredibly strong deterrent
and would protect the public.

Again, getting back to he's never served any actual
prison time before, he's showing he's trying to turn things
around, and I think the crack/powder cocaine disparity is
another reason under this factor to show that giving somebody
ten years or 15 years for this kind of offense even with his
prior background and criminal record is sending a very strong
message and keeping him off the streets for a significant,
significant period of time.

1     And then finally, as I touched upon, the need to

2   avoid unwarranted and unwanted sentencing disparities.  There

3   are numerous other courts -- and I have to believe that it's

4   going to be happening a lot more now that **Kimbrough** is out

5   there.  Courts are finding substantial reasons to grant

6   substantial downward departures in these types of cases.  And

7   I think that looking at all the unique facts and

8   circumstances of this case, as well as the facts and

9   circumstances of this type of case in general, warrants a

10   significant, substantial downward departure.  We believe that

11   ten years is sufficient, but certainly 15 years or less would

12   be absolutely more than adequate under all of the factors

13   that this Court should and can look at.

14     Finally, I don't know if this is appropriate, but

15   two very quick requests from Mr. Tate are that he serve his

16   time in Minnesota or as close to Minnesota as possible and

17   that he would ask for credit for the time served since he was

18   arrested on April 29th, 2007 and he's been in custody that

19   entire time, so we would ask for credit for that time served.

20     THE COURT:  Addressing your last point first, I

21   guess, it was the thought of the probation officer and I

22   think your client that he would benefit from the Residential

23   Drug Abuse Program.  He's not going to get the year off, but

24   that would be at Sandstone or Waseca.  Is that his

25   preference?

1    MR. ANDERSON:  Yes.  Yes.  And in talking with

2    him, I believe Waseca was his number one choice, but either

3    one of those, and he has talked to me anyway about his wish

4    to undergo that drug treatment program even though he may not

5    get any specific credit for that.

6        THE COURT:  All right.  Ms. Perzel, do you want to

7    respond now before Mr. Tate?

8        MS. PERZEL:  Yes, your Honor, and I will do so

9    just very briefly.

10       In this case we need not look far to find a

11   relatively analogous set of facts, because the defendant was

12   involved with a number of co-defendants in this crime and we

13   did have someone who was in some circumstances similarly

14   situated, Mr. Chauvin, who was a career offender and who in

15   that case received a sentence of I believe it was

16   approximately 15 years.

17       THE COURT:  I have it in months, 180.

18       MS. PERZEL:  A hundred and eighty months.  That's

19   what I thought, your Honor.  And as your Honor knows, there

20   were some facts in that case that are different than what is

21   being presented here and those were presented to the Court

22   *in camera*.

23       With respect to the guidelines, the United States

24   is asking that the Court sentence the defendant to the low

25   end of the advisory range, which is 262 months.  If the Court

1    considers -- chooses to consider the crack cocaine/powder

2    cocaine disparity, although the United States believes

3    262 months is appropriate, the United States would request no

4    greater than a two-level reduction -- that would be a 210- to

5    262-month range -- than at level 32.

6            The United States believes, your Honor, in this

7    case that the sentence -- that is the guideline range, the

8    bottom of that box is appropriate in this case.  We are

9    seeing through our investigations a number of offenders who

10   aren't selling significantly large quantities of drugs but

11   are instead choosing to make a lot of money by parting out

12   their drugs and selling the very small quantities.  But based

13   on this set of facts, your Honor, and the defendant's sadly

14   very lengthy criminal history, the United States believes a

15   guideline sentence is appropriate.

16           Thank you.

17           THE COURT:   Thank you, Ms. Perzel.

18           Mr. Tate, you don't have to say anything, but if

19   you want to tell me anything, I'd be happy to listen to you.

20           THE DEFENDANT:   I'd just like to start this letter

21   off by saying it's been so hard for me to think, let alone

22   speak, what's been on my mind with the fear and anxiety that

23   I'm having being in this situation, so I thought I'd put it

24   on paper today.

25           First and foremost, I'd like to apologize to the

1    Court for any inconvenience that I may have caused.

2            Next I'd like to thank Mr. Anderson -- I'd like to

3    thank Mr. Anderson for having an open ear and giving me

4    understanding to the many questions that I've been needing to

5    be answered.  Thanks.

6            MR. ANDERSON:   Thank you.

7            THE DEFENDANT:   Now I'd like to speak on a

8    personal matter, a matter that has to do with the position

9    that I put myself in that has had a dramatic effect on my

10   family and the communities that I sold drugs in.

11           First I want to speak on this issue about my

12   mother, her having the breakdowns about never seeing me

13   outside the prison walls again; secondly, my daughter, who

14   suffers daily from my absence.  Just a few months back I was

15   told that she made comments about not wanting to live

16   anymore.  Her mother told me that she speaks dearly of me and

17   her recent deceased grandmother.  I'm not writing this to be

18   -- for you to be sorry for me, but to see that these two

19   reasons alone is enough for a person to reevaluate his life.

20           I'd like to talk about a few more incidents that

21   had happened that has affected me and the change in my life.

22   It happened early last year, early 2007.  It had to do with

23   two guys from a neighborhood murder, one a very close friend

24   of mine, another like a nephew.

25           At that time -- at those funerals and at that time,

1    I seen the pain, a pain that I just -- that I was yet to see

2    in my life that affected a person's mother, a person's

3    father, and at that time I vowed to myself that I was going

4    to make a change, that I was -- I mean, it was the end of --

5    it was the end of this lengthy life that I lived that

6    involved selling drugs, selling crack.

7          I remember -- I remember clear as day that last

8    night -- that last night that I was in Michigan, I was in

9    Detroit after that funeral, me and my mother sitting down,

10   and we talked, we laughed, we cried.  And I went on

11   explaining -- I went on and told her how stressed I was, how

12   tired I was.  I took her keys.  I remember taking her keys

13   and returning to Minnesota.  I was here two weeks, two weeks

14   before being picked up on other charges which led me here.

15         Basically what I'd like to say -- I mean, I laid --

16   I made a bed that now I have to lay in.  I'd just like to say

17   I'm sorry.  I'm sorry.  There's no more for me to say.  I'm

18   sorry.

19         THE COURT:  Mr. Tate, you just turned 30, right?

20         THE DEFENDANT:   Yes.

21         THE COURT:  You've had a tough 30 years and you've

22   accumulated a lot of criminal history points, and as you can

23   see very dramatically what it does to the numbers in federal

24   court, it just puts you in these huge, lengthy sentences.

25   I'm going to give you a sentence that's below the guidelines

1    somewhat, but it's still a very, very long sentence and it

2    has to be because of the serious behavior.

3          And we can argue -- and lots of what Mr. Anderson

4    says I agree with -- about crack and cocaine and the treating

5    of them differently and the attempts to try to treat them

6    more alike, but that doesn't really answer all of the

7    sentencing issues, because the other big driver in your

8    sentence is 26 criminal history points.  And as I said, I

9    cranked that back a little bit on the advice of the Probation

10   Office because of a couple factors, but there's no way to get

11   around the fact you have a very bad criminal past.

12         So far, as you know, you sort of bounced along

13   doing things on the installment plan, a few days here and

14   there in the criminal system.  As you can see now, it must

15   feel to you and to me to a certain extent that the weight of

16   the world has fallen on you because these huge numbers in

17   federal court, particularly for offenses like this which are

18   serious, mean very long sentences.

19         I have tried to look at where you stand in relation

20   to your co-defendants in the case and what makes sense with

21   regard to them, what makes sense with regard to the

22   disparities between crack and cocaine, what makes sense with

23   regard to the fact that even though you have a long criminal

24   history, you've never served a particularly long sentence

25   before, certainly nowhere near the sort of sentence that is

1    going to be required under the circumstances here.

2            Larry Curtis Tate, you have been charged in an

3    indictment with conspiracy to distribute at least 50 grams of

4    cocaine base and a detectable amount of cocaine in violation

5    of Title 21, United States Code, Sections 841 and 846, which

6    is a Class A felony, and based upon your plea of guilty it is

7    considered and adjudged that you are guilty of the offense.

8            It is therefore adjudged that you be committed to

9    the custody of the Bureau of Prisons for imprisonment for a

10   term of 211 months.  You are to receive credit for the time

11   already served.

12           It is also recommended that you participate in the

13   500-hour Residential Drug Abuse Program during the course of

14   your incarceration.

15           It is also ordered that you serve a supervised

16   release term of I believe it's five years under the following

17   terms and conditions:

18           That you are not to commit any crimes; federal,

19   state, or local.

20           You are to abide by the standard conditions of

21   supervised release as recommended by the Sentencing

22   Commission.

23           You are ordered not to possess any firearms or

24   other dangerous weapons.

25           You are also ordered to cooperate in the collection

1    of your DNA as directed by the Probation Office.

2           I do order that you participate in a program for

3    substance abuse as approved by the Probation Office, and that

4    may may include testing, inpatient, outpatient treatment,

5    counseling, or a support group.

6           It is also ordered that you contribute to the costs

7    of such treatment as determined by the Probation Office

8    Copayment Program, not to exceed the total cost of treatment.

9           You are ordered not to associate with any member,

10   prospect or associate member of the Detroit Boys gang or any

11   other gang.  If you are found to be in the company of such

12   individuals while wearing the clothing, colors, or insignia

13   of the Detroit Boys gang or any other gang, it will be

14   presumed that the association was for the purpose of

15   participating in gang activities.

16          You are also ordered to be employed at a regular

17   lawful occupation deemed appropriate by the Probation Office.

18   If not, you will be required to perform up to 20 hours of

19   community service per week until fully employed.

20          You are ordered to participate in training,

21   counseling, daily job search or other employment-related

22   activities as directed by the Probation Office.

23          I am also going to add what's called a search

24   condition to your supervised release.  I don't do that very

25   often, but I think in your case it's justified.

1          You are ordered to submit your person, residence,

2     office, vehicle or area under your control to a search

3     conducted by the Probation Office or supervised release

4     designee at a reasonable time and in a reasonable manner

5     based upon a reasonable suspicion of contraband or evidence

6     of a supervised release violation.

7          You are ordered to warn any other residents or

8     third parties that the premises and areas under your control

9     may be subject to searches pursuant to that condition.

10         It is also ordered that you pay the special

11    assessment of $100, which is due immediately.

12         No fine will be imposed in light of your financial

13    circumstances.

14         Ms. Perzel, may Counts 2 and 3 now be dismissed?

15         MS. PERZEL:   Yes, your Honor.

16         THE COURT:   Mr. Tate, you have a right to appeal

17    the sentence.  You must do so within ten days.  Actually, I

18    guess it was waived at anything above two hundred and -- it

19    says 262 months.  Obviously the sentence is considerably

20    below 262, so I don't think you have a right to appeal, but

21    if you thought for some reason that right survived, you must

22    file within ten days.

23         The Government does have a right to appeal this

24    sentence, however.

25         And Mr. Tate is entitled to continued assistance of

1    counsel.

2         I have imposed a total sentence of 211 months and I

3    do find that it complies with the statutory objectives for

4    sentencing under Title 18, United States Code, Section

5    3553(a).

6         It is, as I indicated before, a sentence less than

7    the recommended sentencing guidelines.  I've done that for

8    the reasons I've already discussed.  It puts you in what the

9    Court considers the appropriate proportionality of your

10   sentence to other defendants.  It also serves as just

11   punishment, sufficient opportunity for rehabilitation, and

12   it, as I said, does reflect some of the arguments raised by

13   counsel which I've adopted in part.

14        I am going to recommend, Mr. Tate, as you

15   requested, that you serve that sentence at Waseca because

16   they have the drug program, but I don't want to mislead you.

17   I can't control where your sentence is, so it's going to be

18   just a recommendation.  It's not a guarantee that you'll get

19   there.

20        It is important, I think, that -- you have a

21   supportive family and I think it's important that you be as

22   close to them as possible under the circumstances, so I'll

23   make that recommendation.

24        Anything further from the Government?

25        MS. PERZEL:   No, your Honor.  Thank you.

1          THE COURT:   Mr. Anderson?

2          MR. ANDERSON:   Your Honor, does there need to be

3   anything specific regarding credit for time already served,

4   or did you say that?

5          THE COURT:   I think I did say credit for time

6   already served, but they'll have that in the records.

7          Anything further?

8      (No response)

9          THE COURT:   Good luck to you, Mr. Tate.

10          THE DEFENDANT:   All right.  God bless you.

11      (Proceedings concluded at 4:45 p.m.)

12                         *  *  *  *  *

13

14

                    **C  E  R  T  I  F  I  C  A  T  E**

15      I, **TIMOTHY J. WILLETTE,** Official Court Reporter

16          for the United States District Court, do hereby

17          certify that the foregoing pages are a true and

18          accurate transcription of my shorthand notes,

19          taken in the aforementioned matter, to the best

20          of my skill and ability.

21

22          ***/s/ Timothy J. Willette***

23          **TIMOTHY J. WILLETTE, RDR, CRR, CBC, CCP**
        Official Court Reporter – U.S. District Court
24              1005 United States Courthouse
                 300 South Fourth Street
25          Minneapolis, Minnesota  55415–2247
                    612.664.5108